UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| MICHAEL LYNN ANDERSON, | Case No. 1:08-cv-250 |
| Petitioner, | HONORABLE PAUL L. MALONEY |
| v. | Magistrate Judge Ellen S. Carmody |
| JOHN PRELESNIK, Warden, | |
| Respondent. | |

**OPINION and ORDER**

Overruling the Petitioner's Objections and Adopting the R&R;
Dismissing the 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus;

Entering Judgment in Favor of the Respondent;
Declining to Issue a Certificate of Appealability;
Terminating and Closing the Case

The court briefly notes the nature of the crime for which petitioner Michael Lynn Anderson ("Anderson") was convicted, by relying on the prosecution's trial brief – which the respondent quoted at length in his answer to Anderson's habeas petition. *See* Doc 6 at 1-4. Five witnesses testified that they saw Anderson physically harming his then-girlfriend Wendy Currie in the fall of 1995 (before Thanksgiving), including pushing her down the stairs, knocking her down and causing her to strike her head on a concrete floor, and kicking her while she was lying on the ground on at last two occasions. One such witness, "Willie", testified that before the violent incident he witnessed, he had seen Anderson and Ms. Curry together almost every day, but after the incident

he never saw her again. The day after the violent incident in question, Willie asked Anderson where Ms. Curry was, and Anderson replied that he did not know where she was. None of the other four witnesses every saw Ms. Curry again after seeing their particular violent incidents, either.

Shortly after Curry's disappearance, in February 1996, one Laurie Buckley became romantically involved with petitioner Anderson. When Buckley first entered Anderson's bedroom, she noticed clothing which would fit a smaller woman, which troubled her; she asked Anderson whether he had a girlfriend, and he answered that his ex-girlfriend Wendy [Curry] had left that clothing behind. While living with Anderson, Buckley discovered several additional items in Anderson's house which troubled her – Wendy Curry's birth certificate, Social Security card, and driver's license – but she never asked Anderson about them. In August 2002, Buckley ended her relationship with Anderson, allegedly because he beat her with a metal walking cane, and she turned the Curry identification documents over to the police.

In September 1998, nearly three years after any of the witnesses last saw Ms. Curry, three children discovered her skeletal remains; they found her apparently-severed skull lying near a [path about 120-130 feet from a street in the City of Muskegon, and her rib cage, when discovered, showed fractures. The State of Michigan prosecuted Anderson in Muskegon County Circuit Court, LC No. 03-04953-FC. Based on medical testimony, the prosecution theorized that the late Ms. Curry's rib fractures were "consistent with someone pressing his foot down onto the chest while the victim was lying against a hard surface." In February 2005, following trial, a jury convicted Anderson of second-degree murder in violation of MICH. COMP. LAWS § 750.317. Because Anderson was a fourth habitual offender under MICH. COMP. LAWS § 769.12, the state circuit judge sentenced him in March 2005 to 35-65 years of imprisonment.

Anderson lodged a direct appeal to the Michigan Court of Appeals in May 2006. His direct appeal contended that trial counsel rendered constitutionally ineffective assistance in five ways: (1) failing to effectively cross-examine Rural [sic] Keith Carroll, failing to move to strike polygraph testimony or request a cautionary jury instruction regarding that testimony, failing to object to certain out-of-court statements as inadmissible hearsay, failing to object to testimony which violated Federal Rule of Evidence 404(b) ("Other acts" evidence), and failing to request an involuntary-manslaughter instruction. Secondly, Anderson's direct appeal contended that he was denied a fair trial by the admission of several claims by the prosecution's key witness that he had passed a polygraph examination with regard to the substance of his testimony. The prosecution filed its appeal brief in July 2006, the Michigan Court of Appeals affirmed Anderson's second-degree murder conviction in January 2007, stating as follows:

> Of the six bases of ineffective assistance of counsel claimed by defendant, none demonstrate[s] that any error by counsel, if one occurred, was so serious that there is a reasonable probability that, without the error, the outcome of [the] trial would have been different.
>
> There was no posttrial evidentiary hearing, so our review is limited to mistakes apparent from the record. Whether a person has been denied the effective assistance of counsel is a mixed question of fact and law. Questions of constitutional law are reviewed *de novo*.
>
> Effective assistance of counsel is presumed and defendant bears a heavy burden of proving otherwise. In order to justify reversal, defendant must show that counsel's deficient performance constituted error so serious that defendant was denied his Sixth Amendment right to counsel and there was a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.
>
> The first claimed basis of ineffective assistance of counsel is that defense counsel effectively failed to cross-examine Rural Keith Carroll. We conclude that defense counsel's examination was not ineffective. There is no factual variance between Carroll's trial testimony and his earlier testimony, as claimed by defendant. In each instance, Carroll testified that defendant told him that the altercation at the Hall house took place the same day Wendy Currie was found dead. Therefore, different

3

or more extensive cross-examination would not have resulted in diminishing Carroll's credibility on that point. Defense counsel committed no error and was not ineffective.

The second claimed basis of ineffective assistance is defense counsel's failure to object to, or move to strike, Carroll's references during his testimony to having taken, and passed, a polygraph examination. Decisions regarding the questioning of witnesses are presumed to be sound trial strategy. *People v. Bass (On Rehearing)*, 223 Mich. App. 241, 252-53; 565 N.W.2d 897 (1997), *vacated in part on other grounds*, 457 Mich. 866 (1998). A reviewing court should inspect the challenged action, however, to see if it was a sound strategic decision. *People v. Tommolino*, 187 Mich. App. 14, 17-19; 466 N.W.2d 315 (1991). It is a bright-line rule that testimony concerning a polygraph examination is not admissible at trial. *People v. Jones*, 468 Mich. 345, 351; 662 N.W.2d 376 (2003). Therefore, counsel's decision not to object was not *sound* trial strategy. Nevertheless, the jury was ultimately instructed that Carroll's testimony regarding the polygraph was not evidence, and that the result of the examination was irrelevant. A jury is presumed to follow the instructions given to them by the court, *People v. Graves*, 458 Mich. 476, 486; 581 N.W.2d 229 (1998), and instructions are presumed to cure most errors. *People v. Abraham*, 256 Mich. App. 393, 425; 608 N.W.2d 502 (2000). Under the circumstances, we find that there is no reasonable probability that, but for counsel's error, the outcome of defendant's trial would have been different.

The third claimed basis of ineffective assistance is defense counsel's failure to object to four instances of testimony, which defendant characterizes as inadmissible hearsay. First, he challenges Willie McCowan's testimony regarding Hazel Buchanan's statement that defendant killed the victim. We conclude that the testimony was admissible as impeachment evidence of Buchanan's testimony that she never told anyone [that] defendant killed Currie. *See People v. Kohler*, 113 Mich. App. 594, 599; 318 N.W.2d 481 (1981). Because the evidence was admissible, defense counsel was not ineffective for failing to object. *People v. Snider*, 239 Mich. 393, 425; 608 N.W.2d 502 (2000).

Next, defendant challenge's [Willie] McCowan's testimony regarding the statement to Buchanan's daughter confirming that defendant killed Currie. We agree that the testimony was inadmissible hearsay, not admissible for any proper purpose. Nevertheless, even if trial counsel's failure to object was not sound trial strategy, defendant has failed to show that, but for the error, the outcome would have been different. We note that the daughter's statement was merely cumulative to [defendant's mother Hazel] Buchanan's statement.

Defendant also challenges David Pierce's testimony regarding statements made by the victim's employer in Holland and by [defendant's mother Hazel] Buchanan herself. Defendant concedes that the testimony regarding the state made by the

employer is not "significant enough to create a reasonable probability of a different result." And, we find that the testimony regarding the statement made by Buchanan was admissible. It was impeachment evidence. Therefore, counsel was not ineffective in failing to object to the testimony.

The fourth claimed basis of ineffective assistance of counsel is defense counsel's alleged failure to object to inadmissible other-acts evidence. Defendant challenges [former girlfriend] Laurie Buckley's testimony regarding physical abuse of her. Evidence of other crimes, wrongs, or acts of a defendant is inadmissible to prove a propensity to commit such acts. *People v. Crawford*, 458 Mich. 376, 383; 582 N.W.2d 785 (1998), citing MRE 404(b). Other-acts evidence, nonetheless, is admissible for purposes other than to show [action in] conformity with character. MRE 404(b)(1). The challenged evidence in this case was properly admissible under MRE 404(b). It was offered for a proper purpose and was relevant for that purpose, specifically assisting the prosecutor in showing intent as an element of malice and rebutting the defense of accident. Its probative value was not otherwise outweighed by the danger of unfair prejudice. Because the evidence was properly admissible, *id.* at 385, defense counsel's failure to object was not ineffective [assistance].

The fifth claimed basis of ineffective assistance of counsel is defense counsel's failure to request a jury instruction on involuntary manslaughter. Involuntary manslaughter is a necessarily included lesser offense of murder, but an instruction on involuntary manslaughter must be given only if supported by a rational view of the evidence. *People v. Mendoza*, 468 Mich. 527, 541; 664 N.W.2d 685 (2003). Because a rational view of the evidence would not have supported the change [sic, probably should be "charge"], it would not have been proper to provide it to the jury. The sole element that distinguishes murder from manslaughter is malice. *Id.* at 536. Malice is present if the actual intent is to inflict great bodily harm or to act in obvious disregard of life-endangering consequences. *People v. Goecke*, 457 Mich. 442, 464; 579 N.W.2d 868 (1998). There was no evidence presented at trail to support [the conclusion] that defendant did not act with at least the culpability necessary to find malice. A claim of ineffective assistance of counsel that is based on defense counsel's failure to object, where the failure could not have affected the defendant's chances for acquittal, is without merit. *People v. Lyles*, 148 Mich. App. 583, 596; 385 N.W.2d 676 (1986). Therefore, counsel was not ineffective on this basis.

The sixth claimed basis is that the cumulative effect of counsel's errors resulted in ineffective assistance. We only found two areas in which an objection by trial counsel would have been successful: [t]he testimony regarding the polygraph and one instance of claimed hearsay. Even considered together, we do not believe these errors constitute ineffective assistance of counsel.

Defendant next argues on appeal that he was denied a fair trial by Carroll's numerous

references, while testifying, to taking and passing a polygraph examination. The admission of polygraph evidence was plain error. *People v. Nash*, 244 Mich. App. 93, 97; 685 N.W.2d 87 (2000). However, this error was waived when defense counsel not only failed to object to the testimony at trial, [but] declined the trial court's offer of a curative instruction. Finally, when the jury sent a note to the trial court during its deliberations regarding the [polygraph] testimony, defense counsel participated in crafting a response to the jury's question on the subject. Defendant waived this issue, and that waiver extinguished any error. *People v. Carter*, 462 Mich. 206, 214; 612 N.W.2d 144 (2000).

Affirmed.

*People v. Michael Lynn Anderson*, COA No. 133455, 2007 WL 247940, *1-3 (Mich. App. Jan. 30, 2007) (per curiam) (P.J. Sawyer, Neff) (other internal citations omitted). Judge White penned a separate concurrence which stated, in its entirety:

> The record is replete with unobjected-to hearsay, and otherwise objectionable testimony. Nevertheless, on balance, I must concur in the affirmance because I am unable to conclude that defendant was deprived of a substantial defense, or that there was a reasonable probability that, but for counsel's unprofessional errors, the result would have been different.

*Anderson*, 2007 WL 247940 at *3. The Michigan Supreme Court denied review, stating only that it was not persuaded that the questions presented merited review. *See People v. Anderson*, *app. den.*, No. 261933, 479 Mich. 861, 735 N.W.2d 238 (Mich. July 30, 2007).

Pursuant to 28 U.S.C. § 636 and W.D. MICH. LCIVR 72.2(b), this matter was automatically referred to the Honorable Ellen S. Carmody, Magistrate Judge, who issued a Report and Recommendation ("R&R") on January 4, 2010, *see* Doc 39. Plaintiff filed objections, dated January 18 and received January 22, 2010, which the court treats as timely, *see* Doc 40. The court directed the warden to respond to Anderson's objections no later than Friday, March 5, 2010, *see Anderson v. Prelesnik*, 2010 WL 395907 (W.D. Mich. Jan. 4, 2010) (Maloney, C.J.), and the warden did so, *see* Doc 42.

**The court finds the R&R to be well-reasoned and is unconvinced by the plaintiff's objections.** Most broadly, the court finds that petitioner Anderson's objections are, in large part, not sufficiently specific and articulated even to trigger *de novo* review of the limited portions of the R&R to which he has objected. "'Only those objections that are specific are entitled to a *de novo* review under the statute.'" *Westbrook v. O'Brien*, 2007 WL 3462337, *1 (W.D. Mich. Nov. 15, 2007) (Maloney, J.) (citing *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (no *de novo* review where the objections are frivolous, conclusory or too general because the burden is on the parties to "pinpoint those portions of the Magistrate's report that the district court must specifically consider")).

Anderson does not cite *any* case law or other authority which supports his assertion that the Magistrate Judge erred in concluding that the Michigan courts' rejection of his claims neither contradicted nor unreasonably applied "clearly established" federal law (as determined only by reference to the holdings of the U.S. Supreme Court, *see Abdul-Kabir v. Quarterman*, 550 U.S. 233, 261 n.22 (2007) (Stevens, J., for a 5-4 majority) ("What is most relevant under AEDPA, however, is [sic] the holdings set forth in majority opinions, rather than the views of dissenters . . . ."); *Ruelas v. Wolfenbarger*, 580 F.3d 403, 408 (6th Cir. 2009) ("'clearly established federal law' in [28 U.S.C.] § 2254(d)(1) simply 'refers to the holdings' of the Supreme Court") (quoting *Hereford v. Warren*, 536 F.3d 523, 528 (6th Cir. 2008) (citation omitted)), *pet. cert. filed on other grounds*, – U.S. –, – S.Ct. –, 78 U.S.L.W. 3454 (U.S. Jan. 21, 2010) (No. 09-882); *see, e.g., In re Davis*, – U.S. –, 131 S.Ct. 1, 3 (2009) (Scalia, J., dissenting on other grounds, joined by Thomas, J.) ("A state court cannot possibly have contravened, or even unreasonably applied, 'clearly established Federal law . . .', by rejecting a type of claim that the Supreme Court has not once accepted as valid.").

Not only has *Anderson* failed to cite or quote any Supreme Court decision directly to show that the state court here violated clearly established federal law in rejecting his challenge to the second-degree murder conviction, he fails even to provide other case law where lower federal courts persuasively held that a state court violated a Supreme Court holding in a similar situation. This alone constitutes an adequate ground for refusing to entertain petitioner Anderson's unsupported objections to the R&R. *See, e.g., US v. Lockett*, – F. App'x –, 2009 WL 5084096, *14 (6th Cir. Dec. 29, 2009) (C.J. Batchelder, Gibbons, <u>Chief D.J. Maloney</u>) ("Lockett's failure to cite any specific authority for his assertions in the above passage is another ground for refusing to entertain those assertions.") (citing, *inter alia*, *In re Mitan*, 573 F.3d 237, 248 n.5 (6th Cir. 2009) ("The creditors provide no citation to authority or argument to support their last-sentence request. The creditors consequently have waived the issue.") and *US v. Robson*, 307 F. App'x 907, 912 (6th Cir. 2009) ("Robson cites no authority for this approach, and we are aware of none. Accordingly, we dismiss these . . . undeveloped claims.")); *Fairfield v. Wacha*, 2008 WL 584940, *2 (W.D. Mich. Feb. 28, 2008) ("Fairfield's objection does not cite any case law or any Constitutional, statutory or regulatory provisions, and he does not attempt to *substantively* address any of the Magistrate Judge's legal reasoning or conclusions. [T]hese failings render Fairfield's purported objection the same as no objection at all.") (citing, *Wallace v. Adams*, 51 F.3d 274, 1995 WL 141385 (6th Cir. Mar. 24, 1995) (p.c.) and *Bates v. Chapleau*, 37 F.3d 1498, 1994 WL 532937485 (6th Cir. Sept. 30, 1994) (p.c.)); *Miller v. Palmer*, 2008 WL 4457838, *2 (E.D. Mich. Sept. 30, 2008) ("[M]erely reproducing an earlier unsuccessful motion . . . is not a sufficient objection to the magistrate judge's analysis, and will ordinarily be treated by the court as an unavailing general objection.") (citing *Howard v. HHS*, 932 F.2d 505, 508 (6th Cir. 1991)), *recon. denied*, 2008 WL 5102254 (E.D. Mich. Dec. 1, 2008)).

**In any event, all of petitioner Anderson's objections lack merit or are not properly before this court on federal habeas review.** First, to the extent that Anderson objects that the evidence presented at trial was insufficient to support a finding of guilt on second-degree murder beyond a reasonable doubt, this issue is not properly before this court because he never raised that assignment of error in the state courts or in the instant section 2254 petition. Second, most of the few cases which Anderson cites in support of his assertions are Michigan state-court decisions, which have no precedential force for a federal court applying federal law. *See* P's Objections at 3-4 (trial counsel rendered ineffective assistance by failing to demand an involuntary-manslaughter instruction) (citing *People v. Collins*, 303 Mich. 34, 5 N.W.2d 556 (Mich. 1942)); P's Objections at 5 (admitting inadmissible-hearsay testimony of witness Piece violated Anderson's right, presumably under Sixth Amendment to U.S. Constitution, to confront the witnesses against him, and constituted plain error, and counsel's failure to object constituted ineffective assistance) (citing *People v. Hawkins*, 245 Mich. App. 439; 628 N.W.2d 105 (Mich. App. 2001) apparently only for the meaning of "plain error" and citing no other decisions, federal or state); P's Objections at 5-6 (counsel was ineffective for failing to object to admission of Willie McCowan's testimony as inadmissible hearsay and as inconsistent with the prosecution's witness list) (citing *People v. Hawkins*, 245 Mich. App. 439; 628 N.W.2d 105 (Mich. App. 2001) apparently only for the meaning of "plain error" and citing no other decisions, federal or state).

**As to Anderson's objection that the Magistrate erred in rejecting his ineffective-assistance claim based on failure to request an involuntary-manslaughter instruction**, the R&R accurately noted that Anderson's trial counsel *did* request such an instruction, and the trial court refused. The trial court certainly did not violate any federal law, let alone federal law which was

9

then clearly established, by refusing to give an involuntary-manslaughter instruction; Anderson makes no attempt to specifically show how the evidence would have supported giving such a charge, i.e., identifying which evidence would have allowed a reasonable jury to find that the conduct described amount to involuntary manslaughter rather than a more serious crime (such as second-degree murder, the crime of conviction). *See* P's Objections at 3-4 and Warden's Response at 5-6. *Cf. Palmer v. Bagley*, 330 F. App'x 92 (6th Cir. 2009) (Daughtrey, Cole, Griffin) (affirming denial of section 2254 petition) (state trial court did not violate due process by refusing to instruct jury on involuntary manslaughter as lesser-included offense of capital murder, the charged offense, because the evidence would not have permitted a finding that the killings were accidental rather than purposeful), *cert. denied*, – U.S. –, – S.Ct. –, 2010 WL 757725 (U.S. Mar. 8, 2010) (No. 09-8207); *McDaniel v. McKee*, 2009 WL 1637003, *10 and *15-16 (W.D. Mich. June 11, 2009) ("Petitioner can point to no holding of the United States Supreme Court that would remotely suggest that the Constitution required a [voluntary] manslaughter instruction in this case" rather than merely the first- and second-degree murder instructions which the state trial court gave).

Moreover, without regard to the evidence presented or not presented at Anderson's trial, our Circuit has held that as a matter of law, "the failure to instruct on lesser-included offenses in noncapital cases is not such a fundamental defect as results in a miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure" for purposes of habeas review. *Todd v. Stegal*, 40 F. App'x 25 (6th Cir. 2002) (per curiam) (Kennedy, Daughtrey, Chief D.J. Bell) (citing *Bagby v. Sowders*, 894 F.2d 792, 795, 797 (6th Cir. 1990) (*en banc*)).

**As for Anderson's objection to the R&R's treatment of the admission of Piece's**

**testimony, it lacks merit**. *See* P's Objections at 4-5 and Warden's Response at 6. Anderson asserts that "Mr. Piece's statement was critical because it was part of a scheme in an effort to trick the jury." P's Objections at 5. He fails to recount what Piece testified, let alone to coherently explain how U.S. Supreme Court holdings somehow required the trial court to exclude Piece's testimony as part of a scheme to deceive the jurors. Rather, Anderson asserts only that he

> has shown earlier in: Exhibit A-3 (TT, Vol. 1, pp. 14 - 16) that, after having changed the location of just where the prosecution had assumed Ms. Currie's death had occurred, they had to change the timeline as well, and Petitioner truly believes, that this is why defense counsel did not call the Petitioner's witnesses, who had seen Ms. Currie as late as 1996. For counsel to have allowed the prosecution to get this in, was far below the standard of effective lawyering. [I]t was not admissible, because the witness was available, and hence, denied Petitioner his right to confrontation of the witnesses. * * *

This conclusory and difficult-to-follow objection is unavailing, and it is well settled that a party objecting to an R&R may not simply incorporate prior filings by reference. *See Smith v. Palmer*, 2010 WL 233858, *1 n.1 (W.D. Mich. Jan. 13, 2010) (Maloney, C.J.) ("To the extent that a party purports to incorporate by reference arguments, evidence, or authorities presented in prior filings, he has lodged an unavailing general objection.") (citing *Howard v. HHS*, 932 F.2d 505, 508 (6th Cir. 1991 and collecting district-court decisions to the same effect); *Morrison v. Parker*, 90 F. Supp.2d 876, 878 (W.D. Mich. 2000) (McKeague, J.) ("Plaintiffs' general, nonspecific objections, purporting to incorporate by reference their earlier brief, are tantamount to no objection at all and do not warrant further review.") (citing, *inter alia*, *Neuman v. Rivers*, 125 F.3d 315, 322-23 (6th Cir. 1997)).

**As for Anderson's objection that the state courts denied him a right to a fair trial by allowing the admission of witness Rural Keith Carroll's repeated statements that he had taken and passed a polygraph ("lie detector") test with regard to his testimony**, *see* P's Objections at 5, he simply presents no case law suggesting directly or indirectly that the state courts violated

11

some holding of the U.S. Supreme Court which was then in existence. Nor does he present any case law or reason to believe that the federal constitution required the state courts to depart from the long-standing rule that "the jurors adhered to the instructions given them", *Johnson v. Mitchell*, 585 F.3d 923, 937 (6th Cir. 2009) (citing *Zafiro v. US*, 506 U.S. 534, 540-41 (1993)), *reh'g & reh'g en banc denied* (6th Cir. Feb. 17, 2010), namely the trial court's instruction regarding the witness's polygraph boasts.

**Finally**, Anderson's objections regarding the admission of police officer Hood and Ybarra's testimony, Willie McGowan's testimony, and ex-girlfriend Laurie Buckley's testimony, these objections are inadequately developed and unsupported by any citation to *any* federal decisions, let alone precedential Sixth Circuit Court of Appeals decisions interpreting U.S. Supreme Court holdings to require exclusion of similar testimony. *See* P's Objections at 5-7. Anderson's related objection that the cumulative effect of the erroneous evidentiary rulings violated due process by denying him a right to a fair trial, is not properly before the court at this late stage, because it does not appear that his habeas petition asserted a due-process claim predicated on these putative evidentiary errors.

**CERTIFICATE OF APPEALABILITY**

The U.S. Supreme Court disapproves of blanket denials of certificates of appealability ("COAs"). *Johnson v. Curtin*, 2010 WL 882830, *1 (W.D. Mich. Mar. 9, 2010) (Bell, J.) (citing *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001)). Rather, this court "must 'engage in a reasoned assessment of each claim' to determine whether a certificate is warranted." *Wojnicz v. Woods*, 2010 WL 882837, *6 (W.D. Mich. Mar. 9, 2010) (Edgar, J.) (quoting *Murphy*, 263 F.3d at 467).

Under 28 U.S.C. § 2253(c)(2), "'the court should grant a COA for an issue raised in a § 2254 petition only if the petitioner has made a substantial showing of the denial of a federal constitutional right.'" *Wardlaw v. Howes*, 575 F. Supp.2d 820, 821 (W.D. Mich. 2008) (Paul L. Maloney, C.J.) (quoting *Harbison v. Bell*, 503 F.3d 566, 568 (6th Cir. 2007), *cert. denied*, – U.S. –, 128 S.Ct. 1479 (2008), *cert. granted o.g.*, – U.S. –, 128 S.Ct. 2959 (2008)). To satisfy this standard, "the petitioner must demonstrate that reasonable jurists could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues raised are 'adequate to deserve further review.'" *Wardlaw*, 575 F. Supp.2d at 821(quoting *Harbison*, 503 F.3d at 569 (citing *Banks v. Dretke*, 540 U.S. 668, 705 (2004)). *See also Henley v. Bell*, – F. App'x –, 2009 WL 233283, *1 (6th Cir. 2009) (p.c.) (Siler, Cole, Cook) (citing *Banks*, 540 U.S. at 674), *cert. denied*, – U.S. –, 129 S.Ct. 1057 (2009).

The petitioner need not show, however, that he is likely to succeed on appeal. *See Wardlaw*, 575 F. Supp.2d at 821 (citing *Miller-El*, 537 U.S. at 337); *Workman v. Bell*, 484 F.3d 837, 842 n.3 (6th Cir. 2007) (distinguishing standard for stay pending appeal, which focuses on appellant's likelihood of success on the merits, from the COA standard, which requires a lesser showing), *reh'g & reh'g en banc denied* (6th Cir. May 7, 2007). "'[I]t is consistent with § 2253 that a certificate of appealability will issue in some instances where there is no certainty of ultimate relief.'" *Wardlaw*, 575 F. Supp.2d at 821 (quoting *Walker v. Carlton*, 114 F. App'x 687, 690 (6th Cir. 2004) (quoting *Miller-El*, 537 U.S. at 337)).

Petitioner Anderson does not meet the standard for a COA, because other reasonable jurists would not disagree with the determinations herein. Nor has he presented any other issues which are "adequate to deserve further review."

## ORDER

Accordingly, having reviewed the 28 U.S.C. § 2254 petition for a writ of habeas corpus, the R&R, the petitioner's objections to the R&R, and the warden's response to said objections:

The petitioner's objections [document # 40] are **OVERRULED**.

The R&R [document # 39] is **ADOPTED**.

The habeas petition is **DENIED**.

This case is **TERMINATED** and **CLOSED**.

This is a final order**, but the court declines to issue a certificate of appealability**.[1]

The separate judgment required by FED. R. CIV. P. 58 shall issue contemporaneously.

**IT IS SO ORDERED this 26th day of March 2010.**

/s/ Paul L. Maloney
Honorable Paul L. Maloney
Chief United States District Judge

---

[1] On its own, this court's refusal to issue a COA does not prevent the losing party from seeking a COA from the U.S. Court of Appeals under FED. R. APP. P. 22. *See Wilson v. US*, 287 F. App'x 490, 494 (6th Cir. 2008) ("If the district judge denies a COA, a request may then be made to a court of appeals . . . .") (citing *Kincade v. Sparkman*, 117 F.3d 949, 953 (6th Cir. 1997)).